BOISSONNEAULT v. SAGINAW COUNTY AGRICULTURAL SOCIETY.

1. MUNICIPAL CORPORATIONS — ZONING ORDINANCE — FAIRGOUNDS — RESIDENCE DISTRICT.
    Fairgrounds are considered as residence district in suit to enjoin automobile racing, where city zoning ordinance excepts no area within the city in dividing it into various districts (City of Saginaw Zoning Ordinance, ch 2, § 101.1).

2. SAME—ZONING—FAIRGROUNDS—AUTOMOBILE RACING—CONFORMING USES.
    County agricultural society is treated as an educational institution in suit to enjoin automobile racing on fairgrounds owned by it, where city in which property is located concedes that it should be treated as such an institution, hence accessory uses of the fairgrounds, that is, uses customarily incident to the permitted use would be conforming uses under zoning ordinance (City of Saginaw Zoning Ordinance, ch 2, § 201.1[6][7]).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning, § 113.
[2] 2 Am Jur, Agriculture, § 52.
[2, 4] 58 Am Jur, Zoning, §§ 46, 114.
[3] 20 Am Jur, Evidence, §§ 108, 110.
[5] 58 Am Jur, Zoning, § 154.
[6] 58 Am Jur, Zoning, § 3.
[7] 14 Am Jur, Costs, § 22.

3. EVIDENCE—FAIRGROUNDS—INTERIM USES.
    It is common knowledge that fairgrounds are used for many
    purposes during the period between fairs.

4. MUNICIPAL   CORPORATIONS — ZONING   ORDINANCE — CONFORMING
    USES.
    Use of county agricultural society's fairgrounds for holding pic-
    nics, boxing matches, different types of races and similar
    activities constituted conforming use of such property under
    city zoning ordinance, where ordinance provided for accessory
    uses customarily incident to permitted uses and such activities
    are commonly known to be held at such places (City of Sag-
    inaw Zoning Ordinance, ch 1, § 201.1[6][7]).

5. SAME—ZONING ORDINANCE—DISCONTINUED NONCONFORMING USES.
    Provision of zoning ordinance that after discontinuance of a
    nonconforming use for period of more than 1 year such use
    shall not be resumed is not applicable to uses customarily in-
    cident to permitted use (City of Saginaw Zoning Ordinance,
    ch 1, §§ 201.1[6][7], 301.1).

6. SAME — ZONING ORDINANCE — AUTOMOBILE RACING — CONFORMING
    USE—NUISANCE.
    Finding that automobile racing was a conforming use under city
    zoning ordinance eliminated necessity of finding that such
    activity on county agricultural society's fairgrounds was not
    a nuisance in fact, where ordinance determines what is a
    nuisance and provides for its abatement (City of Saginaw
    Zoning Ordinance, ch 1, §§ 201.1[6][7], 311.1).

7. COSTS—CONSTRUCTION OF MUNICIPAL ORDINANCE.
    No costs are allowed in suit to enjoin the conduct of automobile
    racing at county agricultural society's fairgrounds, now locat-
    ed within city limits, where the construction of the city's zon-
    ing ordinance is involved (City of Saginaw Zoning Ordinance).

Appeal from Saginaw; Sanford (Joseph F.), J.,
presiding. Submitted January 2, 1951. (Docket No.
6, Calendar No. 44,929.) Decided April 3, 1951.

Bill by Glen S. Boissonneault and others against
Saginaw County Agricultural Society, a corporation,
and another to restrain automobile racing. Decree
for defendants. Plaintiffs appeal. Affirmed.

*Heilman & Purcell,* for plaintiffs.

*Alfred P. Pierson,* for defendant Agricultural Society.

*Irving M. Hart,* for defendant Spencer.

*Amicus Curiae:*

*W. Vincent Nash,* City Attorney, *Russell A. Schafer* and *R. James Harvey,* Assistant City Attorneys, for city of Saginaw.

SHARPE, J.  This is a chancery suit to enjoin automobile racing at the fairgrounds in the city of Saginaw, except during "fair week."

The fairgrounds were originally outside the city of Saginaw, but have since been annexed to the city. The premises of the fairgrounds contain approximately 66 acres and are owned and controlled by the Saginaw County Agricultural Society, one of the defendants, which acquired the property in 1916.

The grounds are located on the east side of the city.  The 4-H Club has recently built a 4-H Camp on the grounds for its headquarters which are also used for meetings of sugar beet growers, bean growers and various agricultural associations.  The grounds are used for picnics, boxing matches, baseball, rodeos, auto races, motorcycle races, circuses and storage space.  The record shows that automobile racing was abandoned at the fairgrounds between the years of 1935 and 1947 when it was resumed.

In 1939, the city of Saginaw enacted a zoning ordinance in which this section of the city of Saginaw, including the fairgrounds, is classified as a "Residence A district."  Chapter 1, § 301.1, as amended in 1942, makes provision for nonconforming uses.

It provides that "No nonconforming use, if discontinued for more than 1 year, or changed to a use permitted in the district in which it is located, shall be resumed or changed back to a nonconforming use."

Chapter 2, § 201.1 of the ordinance provides for the uses permitted in a "Residence A district." Automobile racing is not recorded as one of the permitted uses. The ordinance also provides in chapter 1, § 311.1 that any use in violation of the provisions of the ordinance which is begun after the enactment of the ordinance shall be deemed to be a nuisance *per se*.

The articles of incorporation of the Saginaw County Agricultural Society provide:

"The purpose or purposes of this society shall be the holding of fairs or expositions at such place or places in the county of Saginaw, as may from time to time be designated by the directors for the exhibition and competition of agricultural products, and for such other purposes, as the board of directors may select; the awarding of suitable premiums and diplomas for excellence in agriculture, and other products of experimenting in the various branches of agriculture, horticulture, and stock raising; and the advancement of agricultural interests in general."

The cause came on for trial and the trial judge filed an opinion, a part of which reads as follows:

"I am in accord with the view that the society has the implied power to permit automobile racing on the fairgrounds property and that same should not be enjoined unless it constitutes a nuisance *per se* or in fact. It does not appear reasonable or logical to hold that the fairground must remain idle and unproductive all except a week or two of the year. It must also be considered that races are not held often or at unreasonable hours and that the rights of persons having a financial interest in the project

and those interested as spectators should be protected unless there are good reasons for holding to the contrary.

"I must therefore conclude that the fairgrounds are not properly classified as Zone A, residential, and were obviously not intended to be considered as such any more than public parks and buildings similarly classified; and that, therefore, the conduct of automobile racing is not legally prohibited thereby; that the holding of races under the circumstances existing in this case is neither a nuisance *per se* nor in fact; that same is a lawful enterprise and not beyond the authority of defendant society to sanction, provided same are conducted under reasonable regulations, as required by the decree entered in this case. Plaintiffs' motion for rehearing is denied. Defendants may tax the usual motion fee in their favor."

Plaintiffs, as private citizens residing in the neighborhood of the fairgrounds, urge that the society not being incorporated to conduct automobile races as a matter of business separate and apart from the society's regular fair or agricultural activities and the society having abandoned such activities for several years prior to 1937, it possessed no vested right to engage in such activities when the zoning ordinance became effective on May 20, 1939; and that the society's holding or permitting automobile races to be held as a matter of business, separate and apart from regular fair activities, is a nonconforming use under the zoning ordinance and contrary thereto. Plaintiffs also urge that where such automobile racing is persisted in, then such practice becomes and is a nuisance *per se* and subject to be enjoined.

The city of Saginaw, having been permitted to file an *amicus curiae* brief, concedes that the uses permitted in a "Residence A district" are broad in nature and are not restricted to residential purposes only. It does not claim that the agricultural society

as such with its accessory uses is a nonconforming use in an "A" district. It claims that as long as the society uses its premises for educational and expositional purposes and accessory uses within the broad provisions of the ordinance, which were in use on the effective date of the ordinance, it can continue to occupy and use said premises, but that the operation of a commercial automobile race track is not within the permitted uses in a "Residence A district."

Defendants urge that the fairgrounds are not classified by the zoning code as "Residence A district." We are not in accord with this view as chapter 2, § 101.1 provides: "For the purposes of this code, the city of Saginaw is hereby divided into the following districts." No area of the city is excepted from the ordinance, hence in arriving at our conclusions we shall consider the fairgrounds within a "Residence A district."

The city of Saginaw has never claimed that the agricultural society with its accessory uses is a nonconforming use in an "A" district, but the property and buildings were considered as being in the nature of an educational institution, conforming with the provisions of section 201.1(6)(7) of chapter 2 of the ordinance.

The above section of the ordinance provides:

"In a residence A district, no buildings, structures or premises except as otherwise provided in this code, shall be erected or used except for one or more of the following purposes: * * *

"(6) Public buildings and properties, hospitals and sanitariums, and educational, philanthropic and religious institutions (but not including penal or correctional institutions, or institutions for the care of the feeble minded or insane, or for liquor or drug addicts), provided that there is not in connection therewith any activity which is noxious or offensive

by reason of the emission of odors, fumes, dust, smoke, vibration or noise.

"(7) Accessory uses customarily incident to any of the permitted uses."

In view of the above concession of the city of Saginaw, we shall, for the purposes of this opinion, treat the agricultural society as an educational institution and, as such, the accessory uses of the fairgrounds, "uses customarily incident to" the "permitted" use, owe their right to continue under the ordinance to the fact that such permitted uses are conforming uses.

Defendant agricultural society urges that during the period between fairs, the grounds have always been used for picnics, boxing matches, baseball games, rodeos, racing and circuses; that it is the common practice wherever there are fairgrounds to use them for activities similar to those carried on at the society's grounds; and that the society has the right to lease or use the property between fairs to produce revenue to be used by the society to carry out its objectives, provided such activities do not constitute a nuisance.

It is common knowledge that fairgrounds are used for many purposes during the period between fairs. It is to be noted that the fairgrounds along with schools and parks are specifically set out and identified on the zoning map and were made a conforming use in a "Residence A district" in which customary accessory uses are permitted. In view of the fact that the zoning commission had the fairground property, schools and parks in mind as special property and since the holding of picnics, boxing matches, different types of races and similar activities are generally held at the fairgrounds at seasonal times of the year, it is a fair interpretation that the zoning commission had these activities in mind when it pro-

‚vided for "accessory uses customarily incident to any of the permitted uses."

Section 301.1 of chapter 1 of the ordinance provides that: "No nonconforming use, if discontinued for more than one year, or changed to a use permitted in the district in which it is located, shall be resumed or changed back to a nonconforming use." The above section of the ordinance relates solely to nonconforming uses. It has no application to uses customarily incident to the use and maintenance of a fairground. In our opinion automobile racing is a use customarily incident to the use and maintenance of a fairground. It therefore follows that the society has not lost its right to permit automobile racing. The decree provides in part:

"It is further ordered, adjudged and decreed that automobile races may be conducted at said fairgrounds as heretofore, provided, however, that all automobiles engaged in said races shall be equipped with exhaust pipes; that the policy of the defendants to sprinkle the track with chloride solution be continued; that the policy previously adopted by the defendants to not commence Sunday races before 12:15 p. m. be continued."

In the case at bar plaintiffs limit their appeal to a construction of the zoning ordinance. In view of our decision that automobile racing under the circumstances in this case is a conforming use and permitted under the ordinance, we need not discuss the finding of facts made by the trial judge that automobile racing was not a nuisance in fact. The ordinance determines what is a nuisance and also provides for its abatement. If, in the future, the manner of conducting automobile racing or other activities becomes a nuisance in fact, the courts are always open to decide controversial issues.

The decree is affirmed, but without costs as the construction of an ordinance is involved.

REID, C. J., and BOYLES, NORTH, BUTZEL, CARR, and BUSHNELL, JJ., concurred. DETHMERS, J., concurred in the result.